UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CARMEN IVY FRONTANEZ, LAURA DUENO  :
and KRISTI L. REED,                :
          Plaintiffs,      :
                                   :
      v.                           :   No. 5:24-cv-6545
                                   :
STV GROUP, INCORPORATED, STV,      :
INCORPORATED and THOMAS BUTCHER,   :
          Defendants.      :
_____

**O P I N I O N**

**Defendants' Motion to Dismiss, ECF No. 15 — Granted**

**Joseph F. Leeson, Jr.**                                                                                                                                       July 15, 2025
**United States District Judge**

I.       **INTRODUCTION**

       All three Plaintiffs were employees of Defendant STV Group at various levels within the company's hierarchy. All three were fired in August of 2023 on the grounds that each had failed to disclose a purported violation of STV's policy concerning personal relationships. Plaintiffs allege this ground was a pretext and that each Plaintiff was actually fired in violation of their civil rights. Before the Court is a Motion to Dismiss just a few of Plaintiffs' claims. For the reasons that follow, the Motion will be granted.

## II. BACKGROUND

### A. Factual Background[1]

Because the claims related to Frontanez and Dueno and those related to Reed only mildly overlap, the Court addresses their factual underpinnings separately.

#### 1. Allegations pertaining to Frontanez and Dueno

Plaintiff Carmen Ivy Frontanez, "the only Hispanic Puerto Rican supervisor in the … [Douglassville] headquarters," was referred to STV by co-Plaintiff Kristi Reed in 2022. Am. Compl. ¶¶ 16, 22. The two shared a professional relationship prior to the referral. *Id*. ¶ 16. Reed had already recruited Frontanez to her former place of employment before both were dismissed due to company-wide downsizing. *Id*. While at STV, Frontanez oversaw a team tasked with producing documentation necessary for client invoicing. *Id*. ¶ 23. She reported directly to Kim DeLong who, in turn, reported directly to Plaintiff Reed. *Id*. ¶¶ 8, 21.

One of Frontanez's supervisees was Plaintiff Laura Dueno. *Id*. ¶ 9. Dueno was hired to STV's Project Accounting Team on December 12, 2022. *Id*. ¶¶ 34, 37. She has a child with Frontanez's son, though the two are not married. *Id*. ¶ 35. In her initial interview with STV, Dueno avers that she disclosed this fact. *Id*. A screenshot of a conversation between Frontanez and DeLong is attached to the Amended Complaint and purports to show DeLong acknowledging that "we all knew" Dueno had a child with Frontanez's son. *See* ECF No. 13, Ex. A.

---

[1] The Court must accept all allegations in the Amended Complaint, s*ee* ECF No. 13, as true and view them in the light most favorable to the nonmoving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The facts in the Background section are written accordingly.

Dueno had the added responsibility of training new hires. In April of 2023, Dueno was tasked with training Kenna Torres-Ensminger. Am. Compl. ¶ 41. Torres-Ensminger, a white woman, was paid more than both Dueno and Frontanez despite their seniority and experience. *Id*. ¶ 41. Torres's relationship with Frontanez and Dueno was fraught with tension. Frontanez and Dueno allege that Torres exhibited both "condescen[sion] and disdain" toward Frontanez and made several attempts to "smear [Frontanez and Dueno's] good name and reputations." *Id*. ¶¶ 46, 51. This took the form of "reports of false accusations" which were allegedly continued by Torres' successor, Baron Snavely, after she resigned on July 13, 2023. *Id*. ¶ 51.

The accusations prompted an investigation into Frontanez and Dueno by STV's HR Director Judith Mills-Brown. *Id*. ¶ 52. Frontanez "fully cooperated" with the investigation though Dueno was never interviewed. *Id*. ¶¶ 52-53. Ultimately, STV fired both Frontanez and Dueno for "violating the personal relationships company policy." *Id*. ¶ 56. Frontanez and Dueno allege that STV's stated reason for termination is merely a pretext for unlawful discrimination.

        2.        Allegations pertaining to Reed

Kristi Reed tells her own story of discrimination. Reed was hired in October of 2021 as Finance Director of Project Accounting and reported directly to CFO Butcher. *Id*. ¶¶ 69-70. She alleges that she was paid less than her predecessor Paul Levine, a white male. *Id*. ¶ 69. Reed worked out of the Douglassville office in Pennsylvania. *Id*. ¶ 70. In her role, Reed oversaw eight direct reports who themselves oversaw Project Accounting in various locations. *Id*. ¶ 71. One of these individuals was Kim DeLong in Douglassville. *Id*. ¶ 21.

In October of 2022, Butcher added to Reed's work responsibilities, assigning her the duty of supervising the Emergency Response Team in New York City. *Id*. ¶ 72. This assignment

added ten supervisees and increased her work travel, though Reed was not compensated for the extra work. *Id*. On January 23, 2023, Reed complained to Butcher that she was paid less than her male predecessor and that she was not additionally compensated for her new responsibilities. *Id*. ¶ 73. While STV increased her salary in response, it remained less than that of her male predecessor. *Id*. Reed also alleges that Butcher retaliated against her for complaining. *Id*. ¶ 74. More specifically, Reed alleges that Butcher "demeaned [her] in public in front of subordinates and colleagues," was "rude," "treated [her] with contempt and disdain," and "excluded [her] from business communications and decisions that directly affected her responsibilities for Project Accounting." *Id*.

On August 9, 2023, Human Resources Manager Judith Mills-Brown informed Reed that Frontanez—whom Reed had originally referred for employment—was the subject of an internal investigation. *Id*. ¶ 78. Notably, the Plaintiffs' relationship extended beyond the workplace, as evidenced by their transactions on Facebook Marketplace and joint attendance at company functions (including an employer-sponsored picnic held at Frontanez's residence). *Id*. ¶ 16.

Reed purportedly defended her friend upon hearing of the investigation, asserting that it was unfounded and that Frontanez had been "unjustly targeted." *Id*. ¶ 78. Three days later, on August 17, 2023, STV terminated Reed, citing her alleged failure to disclose that Dueno had a child with Frontanez's son. *Id*. ¶ 80.

### B.   Procedural Background

On April 14, 2025, Plaintiffs filed an Amended Complaint. While the Court finds the Amended Complaint, at times, confusingly plead, it gathers the following causes of action.

In Count I, Plaintiffs Frontanez, Dueno, and Reed assert claims against STV arising under Title VII of the Civil Rights Act. More particularly, Frontanez and Dueno assert claims for

disparate treatment, *see* Am. Compl. ¶¶ 105, 108, and a hostile working environment, *see id*. ¶ 109.  For her part, Reed asserts claims sounding in unlawful retaliation on the basis of race, *see id*. ¶ 106, associational race discrimination, *see id*., unlawful retaliation on the basis of sex, *see id*. ¶ 107, disparate treatment on the basis of sex, *see id*. ¶ 108, and a hostile working environment, *see id*. ¶ 109.

In Count II, Plaintiffs Frontanez and Reed assert claims for age discrimination arising under the Age Discrimination in Employment Act against STV.  *See id.* ¶¶ 112-119.

In Count III, Plaintiffs Frontanez, Dueno, and Reed assert claims arising under the Pennsylvania Human Relations Act against STV and Thomas Butcher. *See id.* ¶¶ 120-125.

On April 28, 2025, Defendants filed the instant Motion to Dismiss.  *See* ECF No. 15. Therein, Defendants argue that the Amended Complaint has failed to state a claim with respect to Reed's claim for associational race discrimination and all claims for a hostile working environment. The matter is fully briefed and ready for disposition.

### III.   LEGAL STANDARDS

#### A.   Motion to Dismiss – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "[I]n light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 555 n.3). *See also* Fed. R. Civ. P. 8(a) (requiring the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Also, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**     **Associational Race Discrimination**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This

prohibition includes "associational" discrimination, wherein an employee is "subjected to adverse action because an employer disapproves of interracial association." *Kengerski v. Harper*, 6 F.4th 531, 538 (3d Cir. 2021) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2nd Cir. 2008)). Such adverse action, by definition, imposes discrimination toward the employee herself on the basis of her race, even though the "root animus for the discrimination is prejudice against [minority coworkers]." *Id.* At 538 (quoting *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999)).

### C. Hostile Working Environment — Review of Applicable Law

To establish a hostile work environment claim, the plaintiff must show:

(1) he suffered intentional discrimination because of his national origin, race, or age; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability.

*Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001); *Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 U.S. Dist. LEXIS 1814, at *60-61 (E.D. Pa. Feb. 8, 2005). In deciding whether an environment is "hostile," the court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Title VII "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted). "'[O]ffhanded comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A

plaintiff claiming a hostile work environment based on regular and pervasive harassment must likewise establish that any harassment was due to her membership in a protected class or protected activity. See *Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (per curiam) (citing *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)).

## IV.    ANALYSIS[2]

### A.    Reed's Associational Race Discrimination Claim

Defendants offer two arguments as to why Reed has failed to state a claim for associational race discrimination. First, they argue that Reed has not alleged the "requisite substantial relationship [to Frontanez] necessary to sustain such a claim." ECF No. 15-1, Mot. at 2. Second, notwithstanding the degree of association, Defendants argue that Reed has failed to plead "any facts to support an inference of discrimination *based on* her association with Dueno and Frontanez." *Id*. at 8 (emphasis added). The Court addresses each in turn.

#### 1.    Substantial Relationship

Defendants argue that courts in this jurisdiction "have limited associational race discrimination claims under Title VII to causes of action which involved more substantial relations, such as familial or spousal relationships." *Id*. at 7. In support, they cite *LaRochelle v. Wilma Corp.*, 210 F. Supp. 3d 658, 694 (E.D. Pa. 2016) and *Zielonka v. Temple Univ.*, CIVIL ACTION NO. 9905693, 2001 U.S. Dist. LEXIS 16732 (E.D. Pa. Oct. 12, 2001). However, both of these cases predate *Kengerski v. Harper*, 6 F.4th 531 (3d Cir. 2021). Therein, the Court

---

[2]    Courts in this Circuit interpret the PHRA and Title VII coextensively. *See McCarty v. Marple Twp. Ambulance Corps*, 869 F. Supp. 2d 638, 643 n.3 (E.D. Pa. 2012) ("PHRA violations are subject to the same analysis as ADA and Title VII claims.") Thus, insofar as Plaintiffs bring identical claims under Title VII and the PHRA, the Court applies its Title VII reasoning to both.

reasoned that associational race discrimination claims are "not limited to close or substantial relationships." *Id*. at 539.

Defendants attempt to distinguish *Kengerski* as a retaliation and hostile working environment claim and not a stand-alone associational discrimination claim. However, the Court finds nothing in *Kengerski* to suggest its "close or substantial relationship" reasoning is so confined. Defendants also argue that relaxing the "close or substantial relationship" rule would open the proverbial floodgates of litigation to all sorts of "speculative" or "conclusory" allegations untethered from any plausible inference of racial bias." Def.'s Mot. at 8. The Court finds this concern unfounded. *Kengerski* does not do away with any pleading standard and any claim for associational discrimination must still plead factual allegations to support its claim beyond a speculative level. *See Phillips*, 515 F.3d at 232.

The degree of association seems more appropriate for consideration under the causation element. Indeed, common sense dictates that an interracial marriage is more likely to draw the ire of an intolerant supervisor than an interracial work friendship. *See Kengerski*, 6 F.4th at 539 (3d Cir. 2021) (quoting *Barrett v. Whirlpool Corp*., 556 F.3d 502, 513 (6th Cir. 2009) ("While 'one might expect the degree of an association to correlate with the likelihood of severe or pervasive discrimination on the basis of that association,' the 'degree of association is irrelevant' to whether a plaintiff 'is eligible for the protections of Title VII in the first place.'")) Nevertheless, that argument is better reserved for a later stage of the litigation.

2. Causation

Notwithstanding, Reed must still "allege[] facts that could support a reasonable inference of a causal connection" between her association with Frontanez[3] and her termination. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 793 (3d Cir. 2016).  Principles of causation in employment discrimination cases are well established.  Absent direct evidence, Courts will look to circumstantial evidence of causation including but not limited to "an unusually suggestive temporal proximity between" between the association and the adverse action and/or "a pattern of antagonism coupled with timing to establish a causal link." *Summy-Long v. Pennsylvania State Univ.*, 226 F. Supp. 3d 371, 417 (M.D. Pa. 2016) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  Defendants argue that Reed has failed to allege any facts which would support an inference that she faced discrimination "based on" her association with Frontanez.  Def.'s Mot. at 8.  The Court agrees.

This argument requires the Court to examine the nature of Reed's association with Frontanez.  In the Amended Complaint, Reed indicates that she and Frontanez met and socialized as early as 2015 but became "fast friends" after March 2021.  Am. Compl. ¶ 16.  The two also worked together at a previous employer prior to being laid off.  Not long after, in April of 2022, Reed solicited Frontanez to work for her new employer STV by way of a referral program. Critically, the nature of Reed and Frontanez's association was thus apparent at the outset of Frontanez's hiring in April of 2022.  However, Reed was not fired until roughly sixteen months later.  While there is no "bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without

---

[3]     The Amended Complaint makes no mention of any relationship between Reed and Dueno.

more, cannot create an inference of causation ….” *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *see also Andreoli*, 482 F.3d at 650 (declining an inference of causation where there was a five-month gap between complaint and first adverse action). The Amended Complaint is also devoid of any facts linking the two through an intervening pattern of antagonism.

Accordingly, the Court finds that Reed has failed to state a plausible claim for associational race discrimination. However, the Court does not find that amendment would be inequitable or futile. Accordingly, the claim will be dismissed without prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").[4]

### B.     Hostile Working Environment

All three Plaintiffs assert a claim for a hostile work environment. Defendants argue these claims should be dismissed because the alleged discrimination does not rise to the level of severe or pervasive. The Court addresses this argument below.

---

[4]     It bears noting that this is a narrow ruling. Defendants challenged only the associational race discrimination claim, not Reed's claim for unlawful retaliation. The Amended Complaint alleges that "Defendants STV retaliated against Plaintiff Reed Race White *and* subjected her to disparate treatment and wrongful discharge because of her association with Hispanic Plaintiff Frontanez and Hispanic Plaintiff Dueno." Am. Compl. ¶ 106 (emphasis added). These are two separate claims. Indeed, Reed fleshes out the former in Paragraph 107 where she claims that "Defendants STV retaliated against Plaintiff Reed for engaging in protected activity in violation of Title VII, including her participation in an investigation that named and targeted Hispanic Plaintiff Frontanez and in retaliation for Plaintiff Reed protesting, advocating and defending Hispanic Plaintiff Frontanez." *Id*. ¶ 107. Thus, insofar as Reed asserts that she was retaliated against for engaging in protected conduct in defense of Frontanez and Dueno, that claim survives as unchallenged. However, insofar as Reed claims she was discriminated against because of a mere association, she has failed to state a claim. While two claims have substantial factual overlap, they are analytically distinct.

1.      Reed's claim for a hostile working environment

A fair reading of the Amended Complaint yields two courses of conduct underlying Reed's hostile working environment claim. The first regards Butcher's treatment of Reed after her requests for equal pay. According to the Amended Complaint, Butcher "demeaned [her] in public in front of subordinates and colleagues," was "rude," "treated [her] with contempt and disdain," and "excluded [her] from business communications and decisions that directly affected her responsibilities for Project Accounting." Am. Compl. ¶ 74. The Court finds that these vague and conclusory statements are neither severe nor pervasive enough to establish a claim for a hostile working environment. *See Fekete v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 11-6570, 2011 WL 5572626, at *1 (E.D. Pa. Nov. 16, 2011) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) ("A court need not credit 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.")

The second course of conduct concerns STV's denial of equal wages, retaliation, and the termination of Reed's employment. However, while these are all separately actionable in their own right, and Plaintiffs have brought a claim for each, they are not *harassment* within the meaning of a hostile working environment claim. If retaliation and disparate treatment alone could form the predicate of a hostile working environment claim, the latter would lose its separate character altogether. *See also Roberts v. Health Partners Plans, Inc.*, No. CV 17-0297, 2017 WL 3310691, at *5 (E.D. Pa. Aug. 3, 2017) ("Termination is a discrete act, and is not a component of a hostile work environment claim.")

Because Reed has failed to plead an element of her hostile working environment claim, it will be dismissed. However, the Court does not find an amendment inequitable or futile. *See Alston v. Parker*, 363 F.3d at 235. For instance, if Reed can add facts expounding on what

was racially or sexually demeaning about Butcher's conduct, she may be able to state a claim. Accordingly, this claim will be dismissed without prejudice.

        2.        Frontanez and Dueno's claim for a hostile working environment

Frontanez and Dueno's claims for a hostile working environment are also insufficiently plead. Insofar as their claims are predicated on disparate treatment and retaliation, the Court again reasons that those claims are separately actionable and may not form the basis of a hostile working environment in this instance. Next, insofar as Frontanez and Dueno's claims rests on the false accusations by subordinates, these accusations are neither tied to race nor severe or pervasive enough to be actionable under Title VII.

Frontanez and Dueno allege that they were subject to "false accusations" by Kenna Torres and Baron Snavely in an attempt to smear the Plaintiffs' "good name and reputations." Am. Compl. ¶ 51. They also aver that Torres treated Frontanez with "disdain" and condescension. *Id.* ¶ 46. First, without the substance of these "false accusations," the Court is unable to reasonably infer they are premised on Frontanez and Dueno's race. *Hayden v. Allegheny Health Network*, No. 2:21-CV-00525-MJH, 2024 WL 866346, at *11 (W.D. Pa. Feb. 29, 2024) ("The first element of a hostile work environment claim is that the plaintiff suffered intentional discrimination *because of* her protected class.") In their Response, Frontanez and Dueno claim that these accusations "reeked of underlying racism, bigotry and demonstrated bias." ECF No. 16-1, Resp. at 18. However, they have not plead facts to support that notion.

Second, the underlying "harassment" is neither severe nor pervasive enough to sustain a hostile working environment claim. The Amended Complaint says nothing of the frequency of this harassment. Further, and more problematic, without the substance of the false accusations or facts fleshing out what was disdainful or condescending about Torres's or Snavely's conduct, the

13
071425

Court cannot reasonably infer Frontanez or Dueno were subject to *severe* harassment. Rather, the allegations amount to little more than routine workplace friction beyond the reach of Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"))

Accordingly, the Court will dismiss Frontanez and Dueno's claims for a hostile working environment without prejudice. *See Alston*, 363 F.3d at 235.

## V. CONCLUSION

For the above noted reasons, the Court will grant the Motion to Dismiss and dismiss Reed's claim for associational race discrimination as well as all claims for a hostile working environment.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge